# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF MINNESOTA

-------------------------------------------------

In re:                                            Jointly Administered Ch. 11 Cases
                                                  under Case No. 17-31670 (KHS)

Stinar HG, Inc., Case No. 17-31670

Oakridge Holdings, Inc. Case No. 17-31669


              Debtors.

-------------------------------------------------


## PLAN OF REORGANIZATION OF STINAR HG, INC.,


**Dated: April 16, 2018**

Kenneth Corey-Edstrom (#148696)
kene@sapientialaw.com
SAPIENTIA LAW GROUP
120 South 6th Street, Suite 100
Minneapolis, MN  55402
612-756-7100

Attorneys for Debtor

1

# TABLE OF CONTENTS

**ARTICLE I INTRODUCTION** ......................................................................1

**ARTICLE II DEFINITIONS** .......................................................................1

**ARTICLE III UNCLASSIFIED CLAIMS**.................................................2

**ARTICLE IV CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**..................................................................................................3

**ARTICLE V IMPAIRMENT OF CLASSES OF CLAIMS UNDER THE PLAN** ...........................................................................................................14

**ARTICLE VI GENERAL PROVISIONS**.................................................14

**ARTICLE VII MEANS OF EXECUTION OF PLAN AND FEASIBILITY**.......16

**ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ADMINISTRATIVE CLAIMS**...............................................17

**ARTICLE IX ALTERNATIVES TO THE PLAN OF REORGANIZATION**.....17

**ARTICLE X MODIFICATION OF THE PLAN** .....................................18

**ARTICLE XI CONTINUING JURISDICTION OF THE BANKRUPTCY COURT**...........................................................................................................18

**ARTICLE XII CONTESTED CLAIMS** ..................................................18

**ARTICLE XIII RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS** ......19

**ARTICLE XIV DISCHARGE, RELEASE AND EFFECT OF CONFIRMATION**............................................................................................19

**ARTICLE XV MISCELLANEOUS PROVISIONS** ...............................20

# ARTICLE I
## INTRODUCTION

Stinar HG, Inc. ("Debtor" or "Stinar"), a Minnesota Corporation, hereby proposes the following plan of reorganization (hereinafter "the Plan") pursuant to United States Bankruptcy Code, Title 11 of the United States Code for Single Asset Real Estate Case Filings.

# ARTICLE II
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings hereinafter set forth. Any terms contained in this Plan that are not specifically defined shall have the meaning provided for in the Bankruptcy Code, unless the context otherwise requires.

"Confirmation Date" means the date of entry of an order confirming the Debtor's Plan.

"Effective Date" means the Seventh business day following the filing date of the final order confirming this Plan.

"Interest" means the equity interest of any shareholder in Stinar.

"Net Liquidation Value" means the estimated sum available to unsecured creditors after payment of administrative and secured claims.

"Plan" means this Chapter 11 plan of reorganization and any amendments, or modifications thereto.

1

"Pro Rata Share" means, as to a claimant, the amount determined by multiplying the total amount of debtor's payment to a particular class by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total amount of all allowed claims in that class.

## ARTICLE III
## UNCLASSIFIED CLAIMS

A.    Unclassified Claims.

Unclassified Claims include:

(a)    All fees payable, including quarterly fees payable to the United States Trustee and any court fees, as required under 28 U.S.C. § 1930(a)(6).  As of the date hereof, Stinar is current with such fees.

(b)    Post-petition Claims, incurred in the ordinary course of Stinar's business other than those listed in paragraph c and d below. Stinar is current with all such expenses as of the date hereof.

(c)    Allowed Priority Expense Claims, except as otherwise classified herein, including:

1) Allowed administrative expense fees and expenses of counsel for Stinar and Oakridge and special counsel for Oakridge or pursuant to 11 U.S.C. § 503(b) as well as any other professionals hired by Stinar and whose retention and fees have been or will be approved by the Court.
2) Administrative Claims of taxing authorities for post-petition taxes under 11 U.S.C. § 507(a)(2) and 503(b). Stinar is current on post-petition taxes.

3) Claims of taxing authorities for pre-petition taxes entitled to priority by reason of 11 U.S.C. § 507(a)(8). Stinar's parent, Oakridge Holdings, LLC has a claim filed against it by the Minnesota Department of Revenue but Stinar believes it has no material pre-petition taxes owed to any taxing authority.

2

B.    <u>Treatment of Administrative Priority Claims</u>: The foregoing Allowed Administrative (507(a)(2)) Claims will be satisfied by payment in full on the Effective Date, to the extent not otherwise paid in the ordinary course of business as the same become due or as agreed upon by a particular Claimant.  Stinar will continue to pay all fees payable, including quarterly trustee fees, and any other court fees, that come due until the Chapter 11 case is closed, converted or dismissed, as required by 28 U.S.C. § 1930, but subject to any amendments to the Bankruptcy Code made retroactively applicable to this case.  After confirmation, Stinar agrees to submit quarterly operating reports to the United States Trustee, in the format prescribed by the trustee until the case is closed, dismissed or converted.

C.    <u>Treatment of Non-Administrative Priority Claims</u>: 1) Amount of Claims a) All Allowed Claims under § 507(a)(8) will, unless otherwise agreed, be paid in full, in regular monthly installments, over a period of no more than 60 months from the date of the filing of Stinar's Bankruptcy Petition with interest as required by applicable state or federal law.  Stinar believes that there are no Section 507(a)(8) claims.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Classified Claims against Stinar are set forth below, along with the treatment to be afforded each Class.

A.    <u>Classified Claims and Interests</u>.

3

1.    Class I.  Secured Claims

The amount of the secured claims of the Debtor are determined by the value of the various assets held by the Debtor. As of the Petition Date, the major asset of Stinar is a piece of real property consisting of 7.1 acres in Eagan Minnesota upon which it operates its business (its sole location). With needed roof and building improvements and outstanding environmental issues, the real estate has a liquidation value of $1,836,750. Stinar also had, as of the date of filing, current assets, valued at generally accepted accounting principles $1,188,166.19. Net Liquidation Value of all assets of the Debtor as of the date of filing is approximately $2,226,791 as shown on Exhibit 2. A liquidation analysis is attached as Exhibit 2 to the Disclosure Statement accompanying this Plan.

Pre-petition the following parties held secured debt against Stinar as listed below:

2.    Class IA:    Claims of Signature Bank

Signature Bank that has two loans totaling a current balance of approximately $1,132,482.00. More specifically, the loans and security for the Signature Bank loans are:

Loan No.        5802:
Balance:        $831,715
Description:    Payable in monthly installments of $ 6,672 including interest at 6.0 %, with a balloon payment in January 2023. Effective June 2015, the interest rate was raised to 10 % due to payment default in accordance with the terms of the note.

4

Security:        The note is secured by the first mortgage on property owned
                 by Stinar, a blanket lien in all of Steiner's assets and a
                 continuing commercial guarantee from both Oakridge
                 Development and Robert Harvey and by the assignment of a
                 life insurance policy on Robert Harvey.

Loan No.         5803:
Balance:         $300,767.00
Security:        Mortgage on the land and buildings at 3255 Sibley
                 Memorial Highway, Eagan, Minnesota consisting of an
                 office, shop and out lots totaling approximately 7.1 acres
                 and blanket lien on assets of Steiner (with equipment lien
                 subordinate to SBA).

Description:     Bank portion of SBA 504 loan guaranteed note payable in
                 monthly installments of $ 20,503 including interest at the
                 prime rate (as published by the Wall Street Journal) plus 1
                 %, adjusted every calendar quarter (4.25 % at June 30,
                 2016), maturing in May 2018. The note is secured by the
                 assets of the Company and the unconditional guarantee of
                 the chief executive officer/key stockholder.

5

Treatment:

Stinar will pay the principal balance on the Signature Bank loans existing at the Petition Date less any payments made from the Petition Date to the Effective Date as secured claims at the rate set forth in the loan documents beginning thirty days after the Effective Date.  To the extent that Stinar has missed any payments during the course of the bankruptcy, Stinar will extend the Loans by the number of months that the payments were missed payments shall remain the same conditions of any underlying loan documents shall remain in full force and effect.

The secured claimants shall retain a lien and security interest in the collateral, as described forth above, until the principal balances and all accruing interest are paid in full. Nothing in this Plan shall impair the perfection or validity of the Bank's lien and security interest(s) provided to them by Minnesota law.

So long as the payments by Stinar under the terms of the Plan are current, all personal guarantees signed by any guarantor on any of the Loans will also be deemed current and not in default.

Alternatively, Stinar may seek re-financing of the Class IA debt at terms at least as favorable as the current debt structure.

3.    Class IB:    Claims of the Small Business Administration

The Small Business Administration ("SBA") has a separate SBA 504 Loan with a current balance of $632,585. This loan has a twenty-year term and is

6

payable in monthly installments of $ 5,107 including interest and SBA fees for an interest rate of 5.2%. The SBA portion of the 504 loan matures in March 2033. The note is secured by a second mortgage on the land and buildings at 3255 Sibley Memorial Highway, Eagan, Minnesota consisting of an office, shop and out lots totaling approximately 7.1 acres and an unconditional guarantee from both Oakridge Development and Robert Harvey as well as a second position lien on Stinar's equipment.

Treatment:

Stinar will pay the principal balance on the Small Business Administration Loan existing at the Petition Date less any payments made from the Petition Date to the Effective Date as secured claims at the rate set forth in the loan documents beginning thirty days after the Effective Date.  To the extent that Stinar has missed any payments during the course of the bankruptcy, Stinar will extend the Loans by the number of months that the payments were missed payments shall remain the same conditions of any underlying loan documents shall remain in full force and effect.

The secured claimants shall retain a lien and security interest in the collateral, as described forth above, until the principal balances and all accruing interest are paid in full.

7

So long as the payments by Stinar under the terms of the Plan are current, all personal guarantees signed by any guarantor on any of the Loans will also be deemed current and not in default.

Alternatively, Stinar may seek re-financing of the Class IB debt at terms at least as favorable as the current debt structure.

4.     Class 1C:     Claims of Kruckeberg Industries LLC

Kruckeberg Industries LLC ("Kruckeberg") provided a secured loan in the approximate amount of $72,000 to Stinar for the purchase of parts pre-petition.  In addition, pursuant to the now-terminated management agreement between Stinar and Kruckeberg, Stinar owes Kruckeberg $71,820.  That debt is also secured by the assets of Stinar. Finally, Kruckeberg also has a Debtor in Possession loan ("DIP Loan") with Stinar that was approved under a stipulation entered between Stinar and Kruckeberg on May 26, 2017 [Docket 23]. The order approving the stipulation is Docket 26. The terms of the DIP loan were extended via a Stipulation approved by the Court on October 25, 2017 [Docket 63].  The current DIP Financing Agreement expired on December 31, 2017. Stinar is not in compliance with the terms of the extended DIP Financing agreement because per the stipulation the total amount of the DIP loan is now due. The total owing to Kruckeberg on the DIP loan is currently approximately $292,000.00. Total owing

8

to Kruckeberg by Stinar for both pre-petition secured debt and post-Petition DIP funding is currently approximately $436,000.00.

Stinar has made no payments to Kruckeberg during the course of the Chapter 11.  Kruckeberg has a superpriority lien on all of the assets of Stinar over all other creditors except Signature Bank and the Small Business Administration. If Stinar cannot obtain an agreement to extend the DIP Financing Agreement, Kruckeberg has the ability to immediately foreclose on all of the assets of Stinar, subject to the rights of Signature Bank and the Small Business Administration.

Treatment:

Contingent on the approval of a liquidating plan of reorganization for Oakridge, which contingency Kruckeberg may waive at any time, Kruckeberg shall convert all of its rights to payment of any amounts owed prior to the petition date and under the DIP loan into a 100 % ownership interest in Stinar. All current shares or other indications of ownership in Stinar, as further described below will be cancelled.

5.    Class 1D:    Claims of Ford Motor Credit

Ford Motor Credit has a loan with a current balance of approximately $24,704.00 and a security interest on one Ford Truck Chassis owned by Stinar.

Treatment:

Ford Motor Credit's allowed claim will be paid in full within sixty days after the effective date.

B.    Class II:    Unsecured Claims

1.    Class II A: Claim of Robert Harvey.

This class shall consist of the unsecured claims of Robert Harvey, the current President of Stinar. Stinar scheduled this claim at $224,000 although a subsequent review of the books and records shows that the amount due is $59,000.00.

Treatment:

Robert Harvey's claims are to be subordinated to the claims of all other unsecured creditors pursuant to 11 USC § 510(c)(1). When said claims are paid in full Stinar shall pay Claims under Class IIA as funds become available on a semi-annual basis.

2.    Class IIB:    Claim of Oakridge Holdings, Inc.

This class shall consist of the unsecured claims of Oakridge Holdings, Inc., the parent of Stinar. Stinar scheduled this claim at $470,265 although a review of the books and records of the company show that Oakridge eliminated the amounts due from Stinar in connection with filings with the Securities and Exchange Commission based on accounting principles that such inter-company debt should

10

be treated as contribution to the capital of Stinar. Stinar therefore believes that the funds listed as loaned to the company by Oakridge should be treated as a pre-petition addition to capital of the company. Kruckeberg would call their DIP loan if the amounts allegedly due to Oakridge were not recast as a capital contribution.

Treatment:

Stinar will treat the intercompany transfer to Oakridge as contribution to capital of Stinar. This pre-petition ownership interest will be cancelled as a result of the reorganization of Stinar.

3.   Class IIC:   Convenience Class.

This class shall consist of Allowed Unsecured Claims not entitled to priority where the total of the allowed claim does not exceed $3,000.00. Any unsecured creditor whose claim exceeds $3,000 may elect by voting in the plan to be treated as a Class II creditor by electing to reduce their claim to $3,000.00. The holders of Class III claims, shall be paid their Allowed Claims as follows:

Treatment:

The holders of Class IIC Allowed Claims will be paid a total of 100% of their claims, without interest within sixty (60) days after the Effective Date.  Such payments shall be in full satisfaction of each Allowed Unsecured Claim. Stinar estimates that there are approximately $10,000.00 in claims in Class IIC.

4.    <u>Class IID</u>:    General Unsecured Claims.

This class shall consist of Allowed Unsecured Claims not entitled to priority and not treated in any other class in the Plan, including the unsecured portion of any secured claim. Total of all unsecured claims, including claims in the convenience class but not including claims in Classes IIA and IIB that will be re-characterized as pre-petition contributions to capital, were scheduled at $365,875. This figure also includes claims that Stinar tends to dispute prior to making any payment under the terms of this plan of reorganization.

Stinar will pay all Class IID claimants 100% of their allowed claims, without interest. Such payments shall be in full satisfaction of each Allowed Unsecured Claim.  Stinar will pay 50% of all allowed Class IID claims six months after the effective date.  An additional payment will be made 12 months after the effective date.  Stinar estimates that it will take 12 months to pay any creditors in Class IID in full. If Stinar cannot complete payment to all Class IID creditors in 12 months, semi-annual payments will continue until all claims are paid in full. If in the sole opinion of Management, it is possible to accelerate payments to the unsecured creditors in advance of this schedule, it shall do so. In no event shall Class IID Creditors receive any amount greater than 100% of their total allowed claims. Such payments shall be in full satisfaction of each Allowed Unsecured Claim.

5.    <u>Class III</u>:    Equity Interests.

One hundred percent (100%) of the common stock of Stinar is owed by its publicly traded parent company, Oakridge Holdings, Inc., that filed a now jointly administered Chapter 11 case on the same day as Stinar (Oakridge Holdings Bky File No. is 17-31669). On the Effective Date, all certificates of common stock and any other certificate, notes, options, option plans, bonds, indentures, pass through trust agreement, pass through trust certificate, equipment trust certificate guarantee, or other instruments or documents directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in Stinar, (except such certificates, notes, other instruments or documents evidencing indebtedness or obligations of Stinar that are reinstated pursuant to the Plan), shall be cancelled solely as to Stinar, and Stinar and the reorganized debtor, as applicable, shall not have any continuing obligations thereunder, and (ii) the obligations of, claims against, and/or interests in Stinar pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the common stock and any other certificates, notes, options, option plans, bonds, indentures, or other instruments or documents evidencing or creating any indebtedness or obligation of Stinar, except such agreements or certificates, notes or other instruments evidencing indebtedness or obligations of Stinar that are specifically reinstated pursuant to the Plan, as the

13

case may be, shall be released and discharged; the reorganized debtor shall not

have any obligations to any servicer for holders of common stock or other

instruments evidencing ownership in Stinar for any fees, costs, or expenses except

as expressly provided in the Plan.

### ARTICLE V
### IMPAIRMENT OF CLASSES OF CLAIMS UNDER THE PLAN

All classes are impaired under the terms of the plan.

### ARTICLE VI
### GENERAL PROVISIONS

A.     Payments under this Plan will be made by check, mailed postage

prepaid, to the Claimant at the address listed on its proof of claim or, if no proof of

claim has been filed, to the address listed on the schedule.

B.     Except as to the Claims of Taxing Authorities (including the IRS and

the Minnesota Department of Revenue), Stinar reserves the right to designate the

application of any payment on a Claim under this Plan.

C.     In the event a payment is returned to Stinar unclaimed, with no

indication of

Claimant's forwarding address, Stinar will hold such payment for a period of 60

days from the date of return. If not claimed by Claimant by the end of that period,

the payment shall become the property of Stinar.

14

D.     Proofs of Claims or Interests not timely filed will not participate in distributions under this Plan and will be discharged under Bankruptcy Code § 1141(d) unless scheduled by Stinar or otherwise ordered by the Court.

E.     In the event this Plan is not confirmed under Bankruptcy Code § 1129(a), Stinar requests this Plan be confirmed under Bankruptcy Code § 1129(b).

F.     The articles and bylaws of Stinar shall be amended as required by Bankruptcy Code § 1123(a)(6) and as may otherwise be required by this Plan.

G.     Any creditor holding a deposit, including but not limited to utilities, shall return the full amount of the deposit, without the right to setoff, as soon as practicable following confirmation of this Plan.

H.     As of the Confirmation Date, Christopher Thorpe will be elected by the Reorganized Debtor as the president of Stinar, James Richards will be elected as Vice-President of Operations and Craig Kruckeberg, Chris Carlisle, Christopher Thorpe and James Richards will be elected as members of the reorganized Debtor's Board of Directors.

I.     Contingent unliquidated Claims, including any guarantees of Stinar, will be paid to the extent and manner agreed upon by Stinar and the affected parties as approved by the Court, or as liquidated by the Court after hearing, as a general unsecured Claim under Class IID.

15

J. Any funds or benefits received by Stinar by virtue of any adversary proceeding, claim, preference action, or any other legal right assertable by Stinar under Stinar for its operations or to fund the Plan.

If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan shall occur on the next succeeding Business Day.

## ARTICLE VII
## MEANS OF EXECUTION OF PLAN AND FEASIBILITY

A. <u>Plan Implementation</u>. Stinar, after confirmation, will manage its affairs and all of its Assets, and will disburse funds, serving as required as disbursing agent. Stinar will hire additional sales staff within the next 12 months to increase its sales to the levels presented in the forecast attached to the Plan (Exhibit B). Stinar will be responsible for operating the business, paying expenses and making distributions to creditors as set forth in the Plan. Stinar will provide or pay out of operating funds for all of its administrative expenses and business debts in the ordinary course of business, according to the Plan. If necessary, Kruckeberg will infuse sums into Stinar as additional capital to pay the claims of unsecured creditors or the unpaid Administrative Claims on the Effective Date or such other dates as required in the Plan. Kruckeberg has the ability and willingness to provide this additional funding for the success of Stinar and the implementation of the plan. Attached to the Plan and marked as Exhibit B are projections prepared by Stinar's

management.  If Stinar's Plan is confirmed, Stinar is confident of its ability to meet or exceed these projections and perform as set forth under the Plan.

The continued improvement of the operations of Stinar based upon the DIP funding and the assistance of Kruckeberg in providing professional management of Stinar all enhances the feasibility of the Plan and its likelihood of success.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ADMINISTRATIVE CLAIMS

Stinar has no Executory Contracts or leases.  To the extent that any such contracts exist, they are deemed rejected through the confirmation of the Plan. All allowed administrative claims shall be paid on the Effective Date or upon allowance or as otherwise agreed between the holder of the claim and the Debtor.

## ARTICLE IX
## ALTERNATIVES TO THE PLAN OF REORGANIZATION

Based upon the terms of the Plan and the financial situation of Stinar, Stinar believes it can offer more to unsecured claimants than under a liquidation scenario in which Stinar's assets will be first turned over first to the secured creditors, and second to other priority claimants and then paid out to the unsecured creditors. Based on the estimated liquidation value shown in Exhibit 2 to the accompanying disclosure statement, if liquidation were to occur, there would not pay out to unsecured creditors or to Oakridge, Stinar's equity security holder.

17

## ARTICLE X
## MODIFICATION OF THE PLAN

Stinar hereby reserves the right to amend or modify the Plan in the manner provided for under 11 U.S.C. § 1127 or § 1129(a) or (b), at any time prior to confirmation, or if allowed by the Court, at or after confirmation.  Stinar reserves the right to amend the Plan or remedy any defect or omission, or reconcile any inconsistencies of the Plan, or the order of confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan, or insure confirmation.

## ARTICLE XI
## CONTINUING JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction over Stinar's property, after confirmation of the Plan, for the purpose of enforcing the provisions of the Plan, including without limitation, the determination of the amount of Allowed Claims, the hearing of objections, if any, to Claims, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings, including but not limited to any preference actions, actions to subordinate Claims under § 510, to conduct any actions which may be properly removed to the Bankruptcy Court, and for other proper purposes related to this Plan.

## ARTICLE XII
## CONTESTED CLAIMS

Stinar, or any party in interest, has the right to object to Claims or Interests filed within the bankruptcy proceeding within 30 days of the Effective Date, or

such other time as the Court may direct.  The figures, valuations, or numbers given for Claims in the Disclosure Statement and this Plan are approximations. Stinar will examine all Claims and file any objections to such Claims as are appropriate. Any such Claims for which an objection has been filed or with respect to which a determination of value must be made, shall be paid when, and to the extent allowed or determined by the Court, or as otherwise agreed to by Stinar and such claimant, and approved by the Court.

## ARTICLE XIII
## RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS

Stinar reserves all rights, at law or in equity, not otherwise specifically modified by this Plan, to commence adversary proceedings, or take any other legal action allowed by the Bankruptcy Code, or other applicable law.

## ARTICLE XIV
## DISCHARGE, RELEASE AND EFFECT OF CONFIRMATION

The confirmation of the plan shall vest all property of Stinar in the reorganized company per 11 U.S.C. § 1141(b).

The confirmation of the Plan will provide the reorganized debtor with all of its property free and clear of all claims and interests of creditors, equity security holders, and of general partners (if any) in the debtor except as provided for in the plan per 11 U.S.C. § 1141(c).

Further, as limited by the applicable provisions of the Bankruptcy Code, the confirmation of the Plan will discharge the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; such claim is allowed under section 502 of this title; or the holder of such claim has accepted the plan per 11 U.S.C. § 1141(d)(1)(a).

Finally, confirmation terminates all rights and interests of equity security holders and general partners provided for by the plan per 11 U.S.C. § 1141(d)(1)(b).

The discharge granted by 11 U.S.C. § 1141(d) is modified as to the tax debt provided for in this Plan, and the discharge of any tax debt under this Plan shall not be effective until all taxes provided for under this Plan have been paid in full.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

The rules of construction used in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

Except to the extent that the Bankruptcy Code or other Federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, construed and enforced in accordance with, the internal laws of the State of Minnesota.

The rights, duties and obligations of any person or entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person or entity.

The Rest of this page is intentionally left blank

If any creditor has a question concerning the status of payments to any creditor during the life of the plan they should contact Kenneth Edstrom, attorney for Stinar, (612) 756-7108, kene@sapientialaw.com or Abigail McGibbon, attorney for Kruckeberg, (612) 632-3009, abigail.mcgibbon@gpmlaw.com.


Date: April 16, 2018                    STINAR HG, INC.

                                        _____
                                        By:    Robert Gregor,
                                        Its:   Vice-President

Approved as to form:

Dated: April 16, 2018                   /e/  Kenneth Corey Edstrom
                                        Kenneth Corey Edstrom (#148696)
                                        kene@sapientialaw.com
                                        SAPIENTIA LAW GROUP
                                        120 South 6th Street, Suite 100
                                        Minneapolis, MN  55402
                                        612-756-7100

                                        Attorneys for the Debtor

Exhibit A – List of Leases and other Executory Contracts

None

Exhibit B – Financial Projections


See Attached anticipated Revenues and Expenses

| Description | February | March | April | May | June | July | August | September | October | November | December | January | 2018 Total | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | | | | | | |
| Sales — Equipment-ST-100 (FIRM) | $ 463,483.00 | $ 577,042.00 | $ 586,532.00 | $ 584,288.00 | $ 474,650.00 | $ 156,000.00 | | | | | | | $ 2,841,995.00 | | | | | |
| Sales — Equipment-ST-100 (FORECAST) | | | | | | $ 375,000.00 | $ 550,000.00 | $ 575,000.00 | $ 575,000.00 | $ 550,000.00 | $ 550,000.00 | $ 550,000.00 | $ 3,750,000.00 | $ 7,053,434.65 | $ 7,688,243.77 | $ 8,380,185.71 | $ 9,134,402.42 | $ 10,047,842.66 |
| Other Revenue-ST-100 | | | | | | | | | | | | | | | | | | |
| Sales - Parts-ST-100 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 45,000.00 | $ 540,000.00 | $ 550,800.00 | $ 561,816.00 | $ 573,052.32 | $ 584,513.37 | $ 596,203.63 |
| Returns-ST-100 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | | | | | |
| Discounts-ST-100 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | | | | | |
| Sales Tax-ST-100 | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (33.00) | $ (396.00) | $ (400.00) | $ (400.00) | $ (400.00) | $ (400.00) | $ (400.00) |
| **Total Sales/Revenue** | $ 508,450.00 | $ 622,009.00 | $ 631,499.00 | $ 629,255.00 | $ 519,617.00 | $ 575,967.00 | $ 594,967.00 | $ 619,967.00 | $ 619,967.00 | $ 594,967.00 | $ 594,967.00 | $ 594,967.00 | $ 7,131,599.00 | $ 7,603,834.65 | $ 8,249,659.77 | $ 8,952,838.03 | $ 9,718,515.79 | $ 10,643,646.30 |
| **COST OF SALES** | | | | | | | | | | | | | | | | | | |
| Total Cost of Sales | $ 434,463.73 | $ 526,326.31 | $ 528,759.56 | $ 515,805.86 | $ 393,777.11 | $ 440,048.47 | $ 444,623.47 | $ 458,748.47 | $ 458,748.47 | $ 465,748.47 | $ 458,123.47 | $ 451,124.47 | $ 5,576,297.88 | $ 6,339,418.75 | $ 6,785,234.35 | $ 7,210,099.87 | $ 7,762,255.74 | $ 8,274,152.88 |
| **Gross Profit** | 73,986.27 | 95,682.69 | 102,739.44 | 113,449.14 | 125,839.89 | 135,918.53 | 150,343.53 | 161,218.53 | 161,218.53 | 154,218.53 | 136,843.53 | 143,842.53 | 1,555,301.12 | 1,264,415.90 | 1,464,425.42 | 1,742,738.16 | 1,956,260.04 | 2,369,493.42 |
| **OPERATING EXPENSES** | | | | | | | | | | | | | | | | | | |
| Total Operating Expenses | $ 32,462.00 | $ 32,462.00 | $ 32,462.00 | $ 33,462.00 | $ 33,462.00 | $ 33,462.00 | $ 33,462.00 | $ 82,462.00 | $ 34,462.00 | $ 34,462.00 | $ 34,462.00 | $ 34,462.00 | $ 451,544.00 | $ 638,453.92 | $ 642,649.57 | $ 660,904.73 | $ 679,735.24 | $ 699,159.50 |
| **Total Operating Income (Loss)** | 41,524.27 | 63,220.69 | 70,277.44 | 79,987.14 | 92,377.89 | 102,456.53 | 116,881.53 | 78,756.53 | 126,756.53 | 119,756.53 | 102,381.53 | 109,380.53 | 1,103,757.12 | 625,961.98 | 821,775.85 | 1,081,833.43 | 1,276,524.80 | 1,670,333.92 |
| **OTHER INCOME (EXPENSE)** | | | | | | | | | | | | | | | | | | |
| Interest Income | | | | | | | | | | | | | | | | | | |
| Interest Expense-ST-100 | $ (10,700.00) | $ (10,700.00) | $ (10,700.00) | $ (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | (128,400.00) | (128,400.00) | (128,400.00) | (128,400.00) | (128,400.00) | (128,400.00) |
| **Total Other Income (Expense)** | (10,700.00) | (10,700.00) | (10,700.00) | (10,700.00) | | | | | | | | | | | | | | |
| **Net Income (Loss) Before Taxes** | 30,824.27 | 52,520.69 | 59,577.44 | 69,287.14 | 92,377.89 | 102,456.53 | 116,881.53 | 78,756.53 | 126,756.53 | 119,756.53 | 102,381.53 | 109,380.53 | 1,103,757.12 | 625,961.98 | 821,775.85 | 1,081,833.43 | 1,276,524.80 | 1,670,333.92 |
| **PROVISION FOR INC. TAXES** | | | | | | | | | | | | | | | | | | |
| Income Tax Provision (Benefit) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Total Tax Provisions** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Net Income (Loss)** | $ 30,824.27 | $ 52,520.69 | $ 59,577.44 | $ 69,287.14 | $ 92,377.89 | $ 102,456.53 | $ 116,881.53 | $ 78,756.53 | $ 126,756.53 | $ 119,756.53 | $ 102,381.53 | $ 109,380.53 | $ 1,103,757.12 | $ 625,961.98 | $ 821,775.85 | $ 1,081,833.43 | $ 1,276,524.80 | $ 1,670,333.92 |
| Priority Claims (Oakridge)-Assumes Dep't of Revenue Claim of $227,434.57 will be allowed in Full | | | | | | ($5,135.26) | ($5,057.71) | ($5,057.71) | ($5,057.71) | ($5,057.71) | ($5,057.71) | ($5,057.71) | ($40,539.22) | (40,539.22) | (40,539.22) | (40,539.22) | (40,539.22) | (40,539.22) |
| Priority Claims (Stinar)-IRS $11,185.34 | | | | | | ($252.55) | ($252.55) | ($252.55) | ($252.55) | ($252.55) | ($252.55) | ($252.55) | ($2,020.44) | (2,020.44) | (2,020.44) | (2,020.44) | (2,020.44) | (2,020.44) |
| Signature Bank Loan 5802 | | | | | | ($6,672.00) | ($6,672.00) | ($6,672.00) | ($6,672.00) | ($6,672.00) | ($6,672.00) | ($6,672.00) | ($53,376.00) | ($53,376.00) | (80,064.00) | | | |
| Signature Bank Loan 5803 | | | | | | ($20,503.00) | ($20,503.00) | ($20,503.00) | ($20,503.00) | ($20,503.00) | ($20,503.00) | ($20,503.00) | ($164,024.00) | ($164,024.00) | (123,018.00) | | | |
| SBA Loan | | | | | | ($5,107.00) | ($5,107.00) | ($5,107.00) | ($5,107.00) | ($5,107.00) | ($5,107.00) | ($5,107.00) | ($40,856.00) | ($40,856.00) | (61,284.00) | | | |
| Unsecured Claims (Stinar) $365,875 | | | | | | | | | | | $ (182,937.50) | | (182,937.50) | (182,937.50) | | | | |
| Unsecured Claims (Oakridge) $50,000 | | | | | | | | | | | $ (25,000.00) | | (25,000.00) | | | | | |
| **Running Total Net Income (Loss) Less Plan Payments** | $ 30,824.27 | $ 83,344.96 | $ 142,922.41 | $ 212,209.55 | $ 470,073.40 | $ 645,719.19 | $ 850,214.98 | $ 978,460.77 | $ 1,202,706.56 | $ 1,412,952.35 | $ 1,380,510.65 | $ 1,570,004.44 | $ 3,368,665.53 | 4,240,626.33 | 5,961,518.39 | 8,202,525.60 | 10,832,915.56 | 14,250,923.74 |